IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MENTECKY, ) | |
|       Plaintiff, ) | C.A. No. 22-206 Erie |
| ) | |
| v. ) | District Judge Susan Paradise Baxter |
| ) | |
| CHAGRIN LAND, L.P., ) | |
|       Defendants. ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

#### A.   Relevant Procedural History

Plaintiff William Mentecky initiated the present action on June 29, 2022, by filing a complaint against Defendants Chagrin Land, L.P. ("Chagrin"), an Ohio limited partnership; Tall Oak Associates, Inc. ("Tall Oak"), an Ohio corporation that serves as Chagrin's general partner; and Michael Drusinsky ("Drusinsky"), an Ohio resident who is identified as President and owner of Chagrin and Tall Oaks. Plaintiff subsequently filed an amended complaint against the same Defendants [ECF No. 11], which is the operative pleading in this case.

Plaintiff alleges that Defendants owe him unpaid bonus and severance payments to which Plaintiff claims he became entitled under the terms of a unilateral contract that was made by Drusinsky, on behalf of Defendants, on or about August 29, 2021. The complaint contains five counts, all of which are asserted against Defendants Chagrin and Tall Oak: Count I - breach of contract; Count II - negligent misrepresentation; Count III - intentional misrepresentation; Count IV – violation of Pennsylvania's Wage Payment Collection Law, 43 Pa. C.S. §§ 260.1, *et seq.* ("WPCL"); and Count V – quantum meruit/unjust enrichment.

On October 11, 2022, Defendants filed a motion to dismiss Plaintiff's amended complaint asserting that Plaintiff has failed to state a cause of action upon which relief may be granted against Defendants Chagrin and Tall Oak, and that Defendant Drusinsky should be dismissed from this case because Plaintiff has failed to assert any claim against him. [ECF No. 17]. Plaintiff has filed a memorandum of law in opposition to Defendants' motion [ECF No. 20],[1] to which Defendants have filed a reply brief [ECF No. 21]. This matter is now ripe for consideration.

**B.     Relevant Factual History[2]**

At all times relevant to this case. Plaintiff was employed by Chagrin as a Land Manager (ECF No. 11, at ¶ 11). On August 29, 2021, Drusinsky sent an email to Plaintiff and two other Chagrin employees, offering to pay them a year-end bonus and three times their annual salary if the sale of certain property of Chagrin's ("Subject Property") closed prior to year's end and they remained employed with Chagrin as of December 31, 2021 (Id. at ¶ 13). At the time, Plaintiff's annual salary was $80,000.00 (Id. at ¶14).

On or about December 9, 2021, Plaintiff was advised by Chagrin's CFO/Financial Manager, Keith Israelstam ("Israelstam"), that the sale of the Subject Property was imminent (Id. at ¶¶ 19-20). In response, Plaintiff asked whether it was permissible for him to apply and interview with other companies to obtain employment to commence after December 31, 2021, in light of Drusinsky's August 29, 2021, email (Id. at ¶ 21). Israelstam responded, "A prudent

---

[1] In his memorandum, Plaintiff concedes that Defendant Drusinsky should be dismissed from this case, and it will be so ordered by the Court.

[2] The Court accepts as true all well-pleaded allegations of the Complaint, as is required for purposes of determining Defendants' motion.

person would do that" (Id. at ¶ 22). On December 13, 2021, Plaintiff secured other employment set to begin on or after January 1, 2022, and, thereafter, notified Drusinsky of the same (Id. at ¶¶ 24-25). On December 15, 2021, Drusinsky terminated Plaintiff because he "accept[ed] employment with another ... company" prior to year's end (Id. at ¶ 26).

On December 16, 2021, and again on December 17, 2021 Drusinsky demanded that Plaintiff return certain personal property that belonged to Chagrin, which required Plaintiff to drive 172 miles round trip each time (Id. at ¶¶ 30-31). Although Plaintiff was reimbursed for his mileage, he was not compensated for the time he spent returning the personal property on December 16 and 17 (Id. at ¶ 33).

Ultimately, the Subject Property was sold before the year's end, but Plaintiff was not compensated according to the terms of Drusinsky's email of August 29, 2021, because he was not employed with Chagrin as of December 31, 2021.

## II. DISCUSSION

### A. Count I – Breach of Contract

Plaintiff's breach of contract claim is premised on Drusinsky's email of August 29, 2021, which, according to Plaintiff, "created a unilateral contract with [Plaintiff], which conditioned acceptance upon [Plaintiff's] continued employment through the respective incentive period, i.e. until December 31, 2021 (ECF No. 11, at ¶ 35).

Unlike bilateral contracts, which are premised on reciprocal promises, "'unilateral contracts ... involve only one promise and are formed when one party makes a promise in exchange for the other party's act or performance. Significantly, a unilateral contract is not formed and is, thus, unenforceable until such time as the offeree completes performance." Giant Eagle, Inc. v. Comm'r of Internal Revenue, 822 F.3d 666, 673 (3d Cir. 2016), quoting First

Home Savings Bank, FSB v. Nernberg, 648 A.2d 9, 14 (Pa. Super. 1994) (internal citations omitted). Once the offeree performs, however, the offer becomes irrevocable, the contract is completed, and the offeror is required to comply with its side of the bargain. Kemmerer v. ICI Americas, Inc., 70 F.3d 281, 287 (3d Cir. 1995).

Defendant argues that Plaintiff's breach of contract claim must be dismissed because he "undeniably failed to remain employed with [Chagrin] through December 31, 2021," and, thus, did not complete the performance necessary to establish an enforceable contract (ECF No. 18, at p. 7). In opposition, Plaintiff argues that Defendants breached the covenant of good faith and fair dealing by terminating him prior to year's end, thus preventing him from being able to complete his performance of the contract. (ECF No. 20, at pp. 6-13). Though Defendants object that Plaintiff "never alleges [in his amended complaint] that Defendants breached the covenant of good faith and fair dealing" (ECF No. 21, at p. 4), the Third Circuit has recognized that, "under Pennsylvania law, a 'claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim.'" Burton v. Teleflex, Inc., 707 F.3d 417 (3d Cir. 2013), quoting LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391-92 (Pa. Super. 2008). Thus, a breach of such covenant is not required to be separately alleged. See, Lyon Fin. Servs., Inc. v. Woodlake Imaging, LLC, 2005 WL 331695, at *8 (E.D. Pa. Feb. 9, 2005) (observing that "Pennsylvania law does not ... recognize an independent claim for breach of the implied covenant of good faith and fair dealing" and that "[a]ny claim for breach of the covenant of good faith and fair dealing is maintained as a breach of contract action" (citations omitted)); Seiple v. Community Hosp. of Lancaster, 1998 WL 175593, at *2 (E.D. Pa. Apr.14, 1998) ("[w]hile there may be an express or implied covenant of good faith and fair dealing in an

4

employment contract, a breach of such covenant is a breach of contract action, not an independent action for a breach of a duty of good faith and fair dealing").

"While it cannot override the express terms of a contract, the good faith duty is 'an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action.'" Alexander v. Smith & Nephew, Inc., 2020 WL 3470462, at *3-4 (W.D. Pa. Apr. 8, 2020), quoting Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000). In particular,

> Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party. Actions that constitute bad faith include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

Alexander, at *3-4 (internal citations and quotation marks omitted).

Here, Plaintiff has alleged that Defendants "made complete performance impossible by terminating [him] prior to year's end." (ECF No. 11, at ¶ 37). By doing so, Plaintiff contends that Defendants "acted in bad faith by evading the spirit of the bargain, abusing their power to specify terms and interfering and/or failing to cooperate with [Plaintiff's] performance under the contract." (ECF No. 20, at pp. 7-8). Defendants respond that they "could not have acted in bad faith by failing to state in [Drusinsky's August 29, 2021] email that Plaintiff's continued employment was guaranteed and/or set forth any type [of] circumstances by which Plaintiff could still be entitled to the bonus/severance pay should his employment be separated prior to December 31, 2021." (ECF No. 21, at p. 4). But this argument misses the point.[3]

---

[3] Defendants' reliance on the case of Schweikert v. Baxter Healthcare Corp., 2015 WL 4578443 (D.N.J. Jul. 29, 2015) is also misplaced. In Schweikert, the defendant was in the midst of transferring its operations and offered to pay a bonus to certain employees, including the plaintiff, if they continued their employment with the defendant until the

The email in question states that the specified bonus would be paid to Plaintiff, among others, "if [the sales transaction] in fact closes as planned prior to year end, and you have remained in the employment of Chagrin Land in your current position at December 31, 2021." [ECF No. 11-1]. Plaintiff's claim is premised on his allegations that the sale transaction did, in fact, close prior to year's end and he would have remained in his position with Chagrin through December 31, 2021, if Defendants hadn't terminated him, because his new employment was not set to begin until on or after January 1, 2022. Thus, Plaintiff is essentially claiming that Defendants' termination of his employment interfered with his performance and evaded the spirit of the bargain. This is sufficient to state a claim of breach of contract at the pleading stage, and Defendants' motion to dismiss this claim will be denied.

### B.    Count II – Negligent Misrepresentation

Plaintiff alleges that Defendants represented that they would provide payment to him for his continued employment with them, and also represented that his search for new employment would not affect his receipt of payment for his continued work, in order to induce him to continue his employment with Defendants. (ECF No. 11, at ¶¶ 40-42). Plaintiff alleges further that Defendants knew or should have known that their representations were false and misleading because they failed to provide payment to Plaintiff for his continued employment with them, despite his reasonable reliance on such representations. (Id. at ¶¶ 43-45).

---

transfer was complete. Before the transfer was completed, however, the plaintiff accepted a job with another company without the defendant's knowledge or permission. As a result, the defendant terminated the plaintiff and declined to pay the bonus to him because he did not remain employed with the company through the deadline. The plaintiff filed a breach of contract claim, but the claim was dismissed by the District Court because the plaintiff failed to complete performance by remaining an employee of the defendant until the bonus deadline. Although the facts of Schweikert are somewhat analogous to this case, a crucial distinction is that the plaintiff actually began his new employment three months before the bonus deadline. Thus, the termination in Schweikert occurred as a result of the plaintiff's *actual commencement* of employment with another company *prior to the deadline*, whereas, in this case, Plaintiff merely accepted new employment that was *set to commence after the bonus deadline.*

In Pennsylvania, "[n]egligent misrepresentation requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. Bennett v. Itochu Int'l, Inc., 682 F.Supp.2d 469, 480 (E.D. Pa. 2010), citing Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999).

Importantly, "claims for negligent misrepresentation must be based on misrepresentations regarding present facts, not unfulfilled promises to do acts in the future." Carthcart v Micale, 402 F.Supp.3d 110, 116 (E.D. Pa. 2019) (citation omitted).[4] As the Eastern District Court explained in Bennett,

> 'A misrepresentation conveys "false information"; that is, it must be a false statement of fact. But a promise in itself contains no assertion of fact other than the implied representation that the speaker intends to perform the promise. **The misrepresentation must therefore be that the promissor is falsely declaring that he has the intent to perform. If the promissor intends not to perform, however, the misrepresentation (that the promissor intends to perform) is not negligent; it is, rather, knowing and intentional.**'

Bennett, 682 F.Supp.2d at 481, quoting Addie v. Kjaer, 2009 WL 453352 (D.Vi. 2009) (emphasis added).

Based on the foregoing, Defendant asserts that Plaintiff's negligent misrepresentation claim should be dismissed because it is based on Defendant's failure to fulfill a promise to take a

---

[4] Plaintiff argues that the Eastern District Court recognized an exception to the "future promise" rule in West Chester Univ. Found. v. MetLife Ins. Co. of Connecticut, 259 F.Supp.3d 211, 221 (E.D. Pa. 2017), observing that

> '[I]f [Defendant] made statements about future occurrences … which [Defendant] should have known [were] untrue or unlikely to occur, and [Defendant] failed to exercise reasonable care in communicating this information, then negligent misrepresentation has occurred.'

Id., quoting Killian v. McCulloch, 850 F.Supp. 1239, 1254 (E.D. Pa. 1994). However, in West Chester, the court was careful to note that the exception applied to negligent misrepresentation claims that are **not** based on a defendant's representations about its own intended actions, but only those that are based on representations regarding the future performance of things, such as investments, that are outside of defendant's control. Thus, the exception relied upon by Plaintiff does not apply here.

future action. In particular, Plaintiff claims that Defendants represented that they would pay him certain bonus payments if Plaintiff continued his employment with them, when they knew or should have known that such representation was false or misleading. In other words, Plaintiff is claiming that Defendants knew or should have known such representation was false at the time it was made. If true, however, such a representation would be knowing and intentional, not negligent. For this reason, Plaintiff has failed to allege a cognizable claim of negligent misrepresentation, and such claim will be dismissed.

### C. Count III – Intentional Misrepresentation

Under Pennsylvania law, an intentional misrepresentation claim has six elements: (1) a representation; (2) which is material; (3) made falsely, with knowledge of its falsity; (4) with the intent of misleading another; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Pa. v. Navient Corp., 967 F.3d 273, 292 n. 12 (3d Cir. 2020), citing Bortz, 729 A.2d at 560.

As with Plaintiff's negligent misrepresentation claim, Defendants argue that the breach of a promise to do something in the future does not constitute fraud, and that courts in Pennsylvania "routinely dismiss intentional misrepresentation claims at the pleadings stage when, as here, the plaintiff merely asserts that the defendant failed to keep a promise." (ECF No. 18, at p. 14). However, an expressed intention to take future action that "does not actually comport with one's true state of mind at that time ... is a misrepresentation of existing fact" and may serve as the basis for a claim of fraudulent or intentional misrepresentation. Phoenix Techs., Inc. v. TRW, Inc., 834 F.Supp. 148, 152 (E.D.Pa.1993) (citations omitted); see also Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Invs., 951 F.2d 1399, 1410–11 (3d Cir.1991) (noting

that "[a] statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact (citations and internal quotations omitted)).

Here, Plaintiff claims that Defendants "knew or should have known that their representations that they would pay [him] for his continued employment were false and misleading" at the time the representations were made. This is sufficient to state a cognizable claim of intentional misrepresentation at the pleading stage.

Nonetheless, Defendants argue, in the alternative, that Plaintiff's intentional misrepresentation claim is barred by the gist of the action doctrine, which generally "precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 718 (Pa. Super. 2005). "'[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.'" Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001), quoting Redev. Auth. Of Cambria Cnty. V. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. 1996).

"The Pennsylvania Superior Court has frequently applied the gist of the action doctrine to claims for fraud in performance of a contract, but not to claims for fraud in the inducement." H Contractors, LLC v. E.J.H. Construction, Inc., 2017 WL 658240, at *5 (W.D. Pa. Feb. 16, 2017), citing Sullivan, 873 A.2d at 719 (finding that "'fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists") (*quoting* Air Prod. & Chem., Inc. v. Eaton Metal Prod. Co.,

256 F.Supp.2d 329, 341 (E.D. Pa. 2003).[5]

While "Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims," Downs v. Andrews, 639 Fed. Appx. 816, 820 (3d Cir. 2016), the most recent pronouncements in our district have concluded that the gist of the action doctrine should not be viewed as a bar to a fraudulent inducement claim. Angstrom Indus. Grp., LLC v. Blume Honey Water, 2019 WL 316741, at *3 (W.D. Pa. Jan. 24, 2019) ("[T]he gist of the action doctrine does not subject Plaintiff's claims for fraudulent inducement and negligent misrepresentation to dismissal"); Techinomics, Inc. v. Forest Power & Energy Holding, Inc., 2536969, at *3 (W.D. Pa. May 11, 2017), report and recommendation adopted, 2017 WL 2506651 (W.D. Pa. June 9, 2017) (internal citations omitted). Moreover, the Third Circuit Court has recognized that "'[a]pplication of [the gist of the action] doctrine frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims.'" Frank C. Pollara Grp., LLC v. Ocean View Investment Holding, LLC, 784 F.3d 177, 186 (3d Cir. 2015), quoting Addie v. Kjaer, 737 F.3d 854, 868 (3d Cir. 2013). Thus, the Court is not inclined to dismiss Plaintiff's intentional misrepresentation claim at this early stage based upon application of the gist of the action doctrine.

### D. Count IV – WPCL Claim

The WPCL requires that "whenever an employer separates an employee from the payroll … the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." 43 Pa. C.S. § 260.5. Plaintiff claims that Defendant violated the WPCL by failing to pay him a

---

[5] Courts have recognized that "the elements of fraudulent inducement are nearly identical to the elements of intentional misrepresentation" and, so, they are generally treated the same. Alana Healthcare, LLC v. Cigna Corporate Services, LLC, 2021 WL 6063127, at *3 n. 36 (E.D. Pa. Dec. 22, 2021), citing Gregg v. Amirprise Fin., Inc., 245 A.3d 637, 645-46 (Pa. 2021); EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 275 (3d Cir. 2010).

year-end bonus, plus gross wages equal to three times his annual salary, as promised by Defendants in Drusinsky's August 29, 2021, email (ECF No. 11, at ¶¶ 58-59). In addition, Plaintiff claims that Defendant failed to comply with the WPCL by failing to pay him wages for the work he performed on August 16 and 17, when he returned Chagrin's personal property. (Id. at ¶ 60).

Defendants argue that Plaintiff has failed to state a plausible claim under the WPCL because he cannot establish that the compensation he seeks was "earned" prior to his termination. In particular, Defendant note that Plaintiff did not remain employed by Defendants through December 31, 2021, which was one of the stated conditions for earning the bonus and severance payments sought by Plaintiff, and he was not employed by Defendants on the dates he returned Chagrin's personal property. The Court agrees.

It is well-established that the "wages or compensation" at issue must have been "earned," or vested, at the time the employee's separation with the employer occurred. See Riseman v. Advanta Corp., 39 Fed. Appx. 761, 765 (3d Cir. 2002); Scully v. US WATS, Inc., 238 F.3d 497, 516 (3d Cir. 2001). The fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have "earned" it during his employment. Riseman, 39 Fed. Appx. at 765.

Here, Plaintiff claims that, but for Defendants' termination of his employment, without cause, he would have fulfilled the condition of continued employment through December 31, 2021, and earned the promised bonus and severance payments. Thus, Plaintiff is essentially arguing that he should be deemed to have "earned" the promised payments because he was only prevented from doing so by Defendants' alleged breach of the implied covenant of good faith and fair dealing. (ECF No. 20, at p. 18). Alternatively, Plaintiff contends that, at the very least,

"a trier of fact could reasonably find that he 'earned' ... a pro-rata share of the promised bonus and severance for substantially performing his part of the bargain from August 29-December 15, 2021." (Id. at p. 19). However, such claims are not cognizable under the WPCL.

It is well-settled that "[t]he WPCL applies only to back wages already earned." Allende v. Winter Fruit Distributors, Inc., 709 F.Supp. 597, 599 (E.D. Pa. 1989) (citations and quotations omitted); Gardner v. Beasley FM Acquisition Corp., 1997 WL 325794, at *4 (E.D. Pa. June 6, 1997) ("Common sense dictates that [under the WPCL] only back wages, not future wages, could be "earned" by an employee before his termination and paid to him on the next payday"); Ely v. Susquehanna Aquacultures, Inc., 130 A.3d 6, 14 (Pa. Super. 2015) (Courts have "uniformly held that the WPCL does not apply to future earnings"). As the court explained in Barsky v. Beasley Mezzanine Holdings, 2004 WL 1921156 (E.D. Pa. Aug. 30, 2004),

> Lost future earnings, due to an alleged improper termination, are more appropriately categorized as expectation damages. **These lost earnings arise when the employee is prevented from performing the required services by reason of the alleged improper termination and are not covered by the statutory remedy [under the WPCL] .... Rather, they must be recovered through a common law breach of contract action.**

Id. at *2 (emphasis added), citing Regier v. Rhone-Poulenc Rorer, Inc., 1995 WL 395948, at *8 (E.D. Pa. June 30, 1995).

Based on the foregoing, Plaintiff is foreclosed from seeking payment for the compensation he seeks under the WPCL, and his claim will be dismissed accordingly.[6]

---

[6] Plaintiff finds support for his argument that his WPCL claim should be allowed to proceed from the case of Alexander v. Smith & Nephew, Inc., 2020 WL 3470462, at *6 (W.D. Pa. Apr. 8, 2020), in which the Honorable Cynthia Reed Eddy recommended that the defendants' motion for summary judgment as to the plaintiff's WPCL claim be denied in light of the survival of the plaintiff's breach of contract claim, based upon the defendant's alleged breach of the implied covenant of good faith and fair dealing. Id. at *8, report and recommendation adopted, 2020 WL 4450620 (W.D. Pa. Aug. 3, 2020). However, the facts of Alexander are distinguishable from the present case in that the plaintiff in Alexander had already earned the compensation for which he was seeking payment, but was thereafter terminated before he was able to collect the same from the defendant.

### E.    Count V – Quantum Meruit/Unjust Enrichment

To recover on a claim of quantum meruit/unjust enrichment, a plaintiff must establish that: (1) benefits are conferred on one party by another; (2) appreciation of such benefits by the recipient; (3) the acceptance and retention of these benefits under circumstances that would be inequitable for the recipient to retain the benefits without payment of value. Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000). Here, Plaintiff alleges that Defendants received and appreciated the benefit of his continued employment, and that "it would be inequitable for the Defendants to have appreciated and retained the benefits of [his] continued employment without payment to [him]." (ECF No. 11, at ¶¶ 63-65).

Defendants seek to have Plaintiff's claim dismissed, arguing that he has failed to allege "that he performed services beyond his normal job duties," and that "he also never alleges that Defendants failed to pay his normal salary for his services." (ECF No. 18, at p. 23). In support of this argument, Defendants have cited, *inter alia*, the case of Uphoff v. Wachovia Sec., LLC, 2009 WL 5031345 (S.D. Fla. Dec. 15, 2009), in which the defendant announced to its financial advisors that it was likely being bought by another company and that any financial advisor who remained with the company until the sale closed would receive a bonus. Id. at *2. The defendant subsequently announced that no retention bonuses would be paid and the plaintiff filed a class action for unjust enrichment. Id. at *4. The District Court dismissed the claim at the pleading stage, holding that "[c]ourts have held that such equitable relief is not available where the plaintiff has provided a defendant with no more than that which he was hired to do and for which he was paid his salary." Id. at *16. The same reasoning applies here.

While Plaintiff's continued employment with Defendants undoubtedly conferred a benefit upon Defendants that was received and appreciated, it is apparent from Plaintiff's

13

allegations that Plaintiff was paid his normal wages for the work he performed prior to his termination. Plaintiff has presented no allegations to the contrary. Thus, it cannot be said that Defendants were unjustly enriched by Plaintiff's continued employment, and Plaintiff's equitable claim will be dismissed accordingly.[7]

An appropriate Order follows.

---

[7] The Court acknowledges Plaintiff's attempt to buttress his claim by citing the following pronouncement of the Eastern District Court in Hiriam Hicks, Inc. v. Synagro WWT, LLC, 867 F.Supp.2d 676, 700 (E.D. Pa. 2012):

> Pennsylvania [c]ourts have held that where the party excused by impossibility has performed the contract on his side before the impossibility arises[,] justice requires the imposition of a quasi-contract obligation on the party receiving such performance to pay its fair value.

However, as the Eastern District Court subsequently clarified in O'Donnell v. Passport Health Communications, Inc., 2013 WL 1482621, at *14 (E.D. Pa. Apr. 10, 2013), the Hicks court permitted the plaintiff's claim of unjust enrichment to survive summary judgment only because the defendant was permitted to assert the defense of frustration of purpose. The court in O'Donnell noted that, if, in Hicks, the defendant was successful in maintaining its frustration of purpose defense, this would effectively mean that the contract in question would be dissolved, which would then allow the plaintiff to seek restitution through its claim of unjust enrichment. No such circumstances exist here, which renders the Hicks case inapposite.